# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250517 |
| | | TRIAL NO. B-2401977 |
| Plaintiff-Appellee, | : | |
| vs. | : | *JUDGMENT ENTRY* |
| JEFFREY LENZER, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 7/29/2026 per order of the court.**

**By:_____**
        **Administrative Judge**

[Cite as *State v. Lenzer*, 2026-Ohio-2915.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250517 |
| | | TRIAL NO. | B-2401977 |
| Plaintiff-Appellee, | : | | |
| vs. | : | *O P I N I O N* | |
| JEFFREY LENZER, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: July 29, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Glaser Law Office* and *Angela J. Glaser*, for Defendant-Appellant.

**MOORE, Judge.**

{¶1} Following a jury trial, Jeffrey Lenzer was found guilty of two counts of rape and two counts of sexual battery against his then 17-year-old stepdaughter. The sexual-battery counts were merged with the rape counts for sentencing, and Lenzer was sentenced for two counts of rape. Lenzer now appeals, and argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, and that the court erred in how it merged the sexual-battery counts. Because only Lenzer's sentencing challenge is meritorious, the judgment of the trial court is affirmed and the cause is remanded for the court to correct its sentencing entry nunc pro tunc.

## I. Factual and Procedural History

{¶2} On September 6, 2024, Lenzer was indicted on four counts. Counts 1 and 2 alleged that he committed rape, in violation of R.C. 2907.02(A)(2). Counts 3 and 4 alleged that Lenzer committed sexual battery, in violation of R.C. 2907.03(A)(5). In the State's bill of particulars, it alleged that the rape counts pertained to Lenzer's acts of digitally penetrating and performing oral sex on his stepdaughter M.S. As to the sexual-battery counts, the State alleged that Lenzer was in loco parentis when he assaulted M.S.

{¶3} The matter proceeded to a jury trial. The State called M.S., M.S.'s mother, and a neighbor. The State also called Stephanie Helton, who conducted M.S.'s forensic interview at the Mayerson Center for Safe and Healthy Children ("Mayerson Center"), and Sergeant James Whitacre of the Hamilton County Sheriff's Department. Lenzer did not call any witness, nor did he testify on his own behalf.

{¶4} M.S. testified that on December 20, 2022, she was at home alone with Lenzer. She recalled that she had left her room and was on her way to the kitchen,

when Lenzer invited her to lie on the couch with him and watch a movie.

{¶5} M.S. described Lenzer as lying on his side, with his back against the couch's back cushions. M.S. agreed and laid on her back, but ensured that the two were not touching. Lenzer pulled a blanket over the two and M.S. pretended to fall asleep. M.S. testified that Lenzer began touching her legs, removing her pants, and pulling apart her legs, at which point she reached for her phone and began recording the incident. M.S. testified that Lenzer began assaulting her. During the entire encounter, M.S. pretended to be asleep, and she testified that she did not stop Lenzer's advances because she was fearful of what he might do to her. At no point did Lenzer make any threats or exert any force to restrict her. The State played M.S.'s video in court, after which M.S. identified Lenzer as the assailant.

{¶6} M.S. also testified about the events that followed the assault. M.S. stated that she showered, immediately spoke with her next-door neighbor about the assault, and that later that afternoon she told her mother.

{¶7} M.S.'s mother testified that once she returned home on December 20, M.S. told her what had happened and showed her the video of the assault. M.S.'s mother testified that while she could not see the assailant's face, she concluded it was Lenzer based on the assailant's hairline, hair color, and haircut, and that the assailant was wearing a pair of black and white pajama pants. She testified that she had purchased Lenzer an identical pair of pajama pants.

{¶8} Helton and Sergeant Whitacre testified about their efforts once the investigation commenced. Helton recalled conducting M.S.'s interview at the Mayerson Center. The interview was played in court and admitted into evidence. Sergeant Whitacre testified that after reviewing M.S.'s Mayerson interview, he contacted M.S., her family, and Lenzer. Sergeant Whitacre testified that while he was

4

interviewing Lenzer, Lenzer admitted that he and M.S. were watching television that day.

{¶9} The jury found Lenzer guilty on all counts. The court imposed a sentence of nine to 13.5 years for the rape in Count 1, concurrent to the nine-year sentence imposed for the rape in Count 2. The court's sentencing entry stated that the sexual-battery counts were merged into Count 2. This appeal followed.

## II. Analysis

{¶10} Lenzer raises three assignments of error. Lenzer asserts that (1) his convictions for rape under R.C. 2907.02(A)(2) were not supported by sufficient evidence because the State failed to establish that he used force, (2) his convictions were against the manifest weight of the evidence, and (3) the trial court erred when it merged both of the sexual-battery counts into Count 2, and that the court should have merged the sexual battery in Count 3 with the rape in Count 1.

### A. Sufficiency

{¶11} A sufficiency challenge requires that we review "whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dunn*, 2024-Ohio-5742, ¶ 28, quoting *State v. Dent*, 2020-Ohio-6670, ¶ 15.

{¶12} R.C. 2907.02(A)(2) governs the offense of rape. An individual commits rape in violation of the statute when they "engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶13} We have considered similar challenges concerning the absence of force when reviewing convictions and adjudications under R.C. 2907.02(A)(2). *See In re J.A.*, 2023-Ohio-4388, ¶ 29-39 (1st Dist.); *State v. Mitchell*, 2022-Ohio-3713, ¶ 10-13

(1st Dist.). In both cases, we recognized that R.C. 2901.01(A)(1) defines force as "any violence, compulsion, constraint physically exerted by any means upon or against a person or thing." *Id.* at ¶ 30, citing *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus.

**{¶14}** However, courts are not limited to only considering the presence of physical force. The Ohio Supreme Court held in *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1998), that force may be subtle, psychological, and can be a proxy for physical force, especially where a parent abuses a child. The Court in *Schaim* recognized that a difference exists between the coercion necessary to constitute force when the situation concerns an adult assaulting a child. *Schaim* at 58-59. "[B]ecause of the child's dependence on his or her parents, a child of tender years has no real power to resist his or her parent's command, and every command contains an implicit threat of punishment for failure to obey." *Id.* This line of reasoning was reiterated by the Court when it held that "it is nearly impossible to imagine the rape of a child without force involved." *State v. Dye*, 82 Ohio St.3d 323, 327 (1998); *see State v. Cowan*, 2024-Ohio-2028, ¶ 30 (quoting *Dye* and holding that defendant forcibly raped the child, for whom his girlfriend was the guardian, when he assaulted her while she was asleep). "'The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.'" *Eskridge* at 59, quoting *State v. Etheridge*, 319 N.C. 34, 47 (1987) (The North Carolina Supreme Court held that sexual activity between an adult and their child is unique because "the parent wields authority as another assailant might wield a weapon" and that a parent's authority alone may compel a child into submission.).

**{¶15}** We hold that the State put forth sufficient evidence to satisfy the force

element of rape. While Lenzer did not physically overpower M.S. or make any verbal threats, Lenzer employed his authority as M.S.'s stepfather and created a situation of dominance and control when he instructed M.S. to lie on the couch next to him. Lenzer proceeded to assault his stepdaughter, who he believed was asleep. M.S. testified that while she was feigning sleep, she was fearful of the repercussions she would face if she spoke out. The State put forth sufficient evidence to prove the force element of R.C. 2907.02(A)(2).

{¶16} Therefore, Lenzer's first assignment of error is overruled.

### B. Manifest Weight

{¶17} Lenzer argues that his convictions were contrary to the manifest weight of the evidence. He argues that M.S.'s testimony was largely incredible. He asserts that her trial testimony was riddled with inconstancies when compared with her statements made during her Mayerson interview and statements she made to Sergeant Whitacre. Lenzer also emphasizes that M.S. failed to turn over the phone with which she filmed the assault, that she failed to share with police the log-in information for her phone, her iCloud storage or her Snapchat account, and that she did not promptly disclose that she had an intimate relationship with her neighbor

{¶18} A manifest-weight challenge requires that we "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence the [trier of fact] clearly lost its way." (Cleaned up.) *State v. Martin*, 2022-Ohio-4175, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Reillo*, Slip Opinion No. 2026-Ohio-2701, ¶ 38 ("when conducting a manifest-weight review, appellate courts must defer to the fact-finder's witness-credibility determinations."). Credibility determinations are questions for the trier of fact to resolve. *State v. Washington*, 2025-Ohio-5830, ¶ 28 (1st Dist.).

{¶19} "Convictions are not contrary to the manifest weight of the evidence simply because witnesses provided inconsistent testimony at trial." *State v. Sawyer*, 2025-Ohio-5834, ¶ 33 (1st Dist.), quoting *State v. Olverson*, 2024-Ohio-5583, ¶ 26 (1st Dist.). When the jury is presented with inconsistent testimony, the jury is well positioned to believe or disbelieve all or some of the testimony. *Id.* at ¶ 34, quoting *Olverson* at ¶ 26.

{¶20} Having conducted a complete review of the record, we hold that Lenzer's convictions were not against the manifest weight of the evidence. We note that there were certainly inconsistencies between M.S.'s trial testimony and her Mayerson interview and statements made to Sergeant Whitacre. The specific inconsistencies relied on by Lenzer include whether other children were present at the home on the date of the incident, whether M.S. immediately ran to her neighbor, and whether Lenzer laid her on the couch or she voluntarily got on the couch with him. These inconsistencies, to the extent they exist, are minor, relate to nonmaterial details, and are insufficient to support Lenzer's manifest-weight challenge. *See State v. Mitchell*, 2022-Ohio-3713, ¶ 17 (1st Dist.) (minor inconsistencies in a witness's testimony do not reflect that a conviction was contrary to the manifest weight of the evidence). After considering the ample testimony from all the State's witnesses, including the recording of the assault, paired with testimony from M.S. and her mother, both of whom identified Lenzer as the assailant in the video, we cannot say that Lenzer's convictions were against the manifest weight of the evidence.

{¶21} Accordingly, Lenzer's second assignment of error is overruled.

### C. Merger

{¶22} In his third assignment of error, Lenzer argues, and the State concedes, that the sexual battery in Count 3 should have been merged with the rape in Count 1.

The sentencing entry indicates that both counts of sexual battery were merged with the rape in Count 2. This is clearly a clerical error. Clerical errors are mere technical mistakes that are "mechanical in nature" and do not impact the underlying legal decision. *State v. Gray*, 2026-Ohio-814, ¶ 27 (1st Dist.), quoting *State v. Miller*, 2010-Ohio-5705, ¶ 15. This clerical error in the sentencing entry may be corrected by the trial court by a nunc pro tunc entry. Crim.R. 36. Lenzer's third assignment of error is sustained.

### III. Conclusion

{¶23} Having overruled Lenzer's first two assignments of error and sustained his third, we affirm the judgment of the trial court and remand the cause for the court to correct the sentencing entry by a nunc pro tunc entry.

Judgment affirmed and cause remanded.

KINSLEY, P.J., and CROUSE, J., concur.